## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is entered into by and between Hartford A&I and the Debtors (the "Parties"). Capitalized terms in this prefatory paragraph, the following recitals, and in the Sections below have the meanings ascribed to them in the list of Definitions below.

## RECITALS

WHEREAS, certain Asbestos Claims have been brought, and in the future may be brought, against the Debtors, seeking damages and other relief for bodily injury; and

WHEREAS, Hartford A&I and certain other Hartford Entities issued or allegedly issued certain liability insurance Policies to Duro Dyne, or under which Duro Dyne alleges it is entitled to insurance coverage; and

WHEREAS, a dispute has arisen between Hartford A&I and the Debtors as to the scope of Hartford A&I's obligations to provide coverage for the Asbestos Claims; and

WHEREAS, the Debtors and Hartford A&I are parties to the pending Coverage Action concerning the application of the Policies to the Asbestos Claims; and

WHEREAS, on September 7, 2018, the Debtors filed voluntary petitions for relief with the Bankruptcy Court under Chapter 11 of Title 11 of the United States Code, commencing their respective Bankruptcy Cases; and

WHEREAS, the Parties wish to resolve the disputes between them, to provide for the dismissal of the respective claims between the Debtors and Hartford A&I in the Coverage Action, and to provide for the other consideration, promises, releases, and covenants set forth in this Agreement; and

WHEREAS, as part of the compromise and resolution of the Coverage Action, the Debtors have agreed to sell, and Hartford A&I has agreed to purchase, the Policies and the Released

Overseas Policy Interests free and clear of all Interests of any Person, subject and pursuant to the terms of this Agreement;

NOW THEREFORE, in consideration of the foregoing, and in consideration of the other mutual considerations, promises, releases, and covenants as set forth below, the Parties hereby agree as follows:

## DEFINITIONS

The following definitions apply to this Agreement only and are not intended to be used for any other purpose.  In addition, the singular form of a word includes the plural and vice versa; the disjunctive "or" is not exclusive and thus includes the conjunctive "and"; all pronouns apply to the male, female, and neutral genders; the word "any" includes the word "all" and vice versa; the words "includes" or "including" are without limitation; and the past tense of a word includes the present tense and vice versa.

a.      "**Agreement**" means this Settlement Agreement and Release.

b.      "**Approval Date**" means the date on which the Approval Order, having been entered by the Bankruptcy Court, becomes a Final Order.

c.      "**Approval Motion**" means the motion to be filed by the Debtors in the Bankruptcy Cases under Federal Rule of Bankruptcy Procedure 9019(a) and Sections 105(a) and 363 of the Bankruptcy Code, seeking entry of the Approval Order.

d.      "**Approval Order**" means an order of the Bankruptcy Court approving this Agreement and the compromise, settlement, and sale of the Policies and the Released Overseas Policy Interests as memorialized herein, which order shall be substantially in the form of order attached hereto as Exhibit 3 or otherwise in form and substance acceptable to the Parties and the Consenting Entities.

e.      "**Asbestos Claim**" has the meaning ascribed to it in the Filed Plan.

2

f.      **"Asbestos Insurer"** has the meaning ascribed to it in the Filed Plan.

g.      **"Bankruptcy Cases"** means (i) the Chapter 11 cases filed by the Debtors on September 7, 2018, in the Bankruptcy Court and jointly administered under the lead case that is captioned, *In re Duro Dyne National Corp., et al.*, No. 18-27963-MBK; and (ii) any appeal taken from any of the foregoing cases.

h.      **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

i.      **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Bankruptcy Cases or the United States District Court for the District of New Jersey exercising original jurisdiction over the Bankruptcy Cases or to the extent of the withdrawal of any reference under 28 U.S.C. § 157.

j.      **"Business Days"** means days other than a Saturday, a Sunday or any other day on which the commercial banks in New York, New York are required or authorized to close by law or executive order.

k.      **"Cash"** means the legal tender of the United States of America or the equivalent thereof.

l.      **"Channeled Asbestos Claims"** means, collectively, the Asbestos Claims and the Demands.

m.      **"Channeled Asbestos Claimant"** means a holder of a Channeled Asbestos Claim.

n.      **"Claims"** means any and all past, present, or future claims, liabilities, demands, obligations, duties, complaints, cross-complaints, cross-claims, third party complaints, counterclaims, requests, administrative proceedings, directives, and notices, counts, judgments, executions, attachments, debts, lawsuits, actions, direct actions, writs, liens, inquiries, rights,

damages, costs, or any other cause of action or order, including Direct Action Claims, Extra-Contractual Claims, "claims" as that term is defined in 11 U.S.C. § 101(5), and "demands" as that term is defined in 11 U.S.C. § 524(g)(5).

o.      "**Committee**" means the Official Committee of Asbestos Claimants appointed by the United States Trustee in the Bankruptcy Cases on September 26, 2018.

p.      "**Confirmation Order**" means an order entered by the Bankruptcy Court in the Bankruptcy Cases confirming the Plan.

q.      "**Consenting Entities**" means the Committee and the FCR.

r.      "**Coverage Action**" means the case filed on September 19, 2013, by The North River Insurance Company in the Supreme Court of the State of New York, Suffolk County, and bearing the caption, *The North River Insurance Company v. Duro Dyne National Corporation, et al.*, Index No. 062947/2013.

s.      "**Debtors**" means Duro Dyne National Corp., Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp.

t.      "**Demand**" means a demand for payment, present or future, on or against a Debtor, which is referred to in Section 524(g) of the Bankruptcy Code, and that (a) was not a Claim during the Chapter 11 Cases, and (b) arises out of the same or similar conduct or events that gave rise to Asbestos Personal Injury Claims (as defined in the Filed Plan) and is based on, arises from, or is attributable to asbestos-related personal injury or wrongful death.

u.      "**Direct Action Claim**" means any Claim by a Person against any of the Hartford Entities, on account of, based upon, arising from, or in any way attributable to the rights afforded one or more of the Debtors under a Policy, whether arising by contract, in tort, or under the laws

4

of any jurisdiction, including any statute that gives a third party a direct cause of action against any of the Hartford Entities.

v.       "**Duro Dyne**" means Duro Dyne National Corp., Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp., and each of their affiliates, divisions, subsidiaries, officers, directors, employees, successors (including the Trust), and assigns, each solely in their capacities as such.

w.       "**Effective Date**" (also referenced herein as "**Plan Effective Date**") means the Business Day on which the Plan becomes effective or is consummated in accordance with its terms.

x.       "**Execution Date**" means the earliest date on which this Agreement has been signed by all of the Parties.

y.       "**Extra-Contractual Claim**" means any Claim against any of the Hartford Entities seeking any type of relief based upon conduct prior to the Execution Date, including compensatory, exemplary, or punitive damages, on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or omission of a Hartford Entity of any type for which Duro Dyne seeks relief other than coverage or benefits under an insurance policy, including any Claims for economic loss, general damages, attorneys' fees, or costs in connection with the handling of, or refusal to handle, any Claims against the Debtors.

z.       "**FCR**" means (i) Lawrence Fitzpatrick in his capacity as the court-appointed legal representative for all holders of Demands pursuant to Section 524(g) of the Bankruptcy Code; or (ii) any individual who succeeds him in that capacity.

aa.    "**Filed Plan**" means the Second Amended Prenegotiated Plan of Reorganization for Duro Dyne National Corp., *et al.*, Under Chapter 11 of the Bankruptcy Code, filed in the Bankruptcy Court on November 16, 2018 (ECF No. 279), as it may be modified or amended in the future in accordance with the terms thereof, provided that any such modifications or amendments do not contradict or materially impact the terms of this Agreement.

bb.    "**Final Order**" means an order or judgment (including any modification or amendment thereof) that remains in effect and has not been reversed, vacated, or stayed, and as to which the time to appeal or seek review, rehearing or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing, or certiorari has been taken or, if taken, remains pending.

cc.    "**Hartford A&I**" means Hartford Accident and Indemnity Company.

dd.    "**Hartford Entities**" means The Hartford Financial Services Group, Inc., Hartford A&I, and all of their past, present, and future direct and indirect parents, subsidiaries, and affiliates, each solely in their capacities as such, and each of its and their respective officers, directors, employees, successors, and assigns, each solely in their capacities as such.

ee.    "**Interests**" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity.

ff.    "**Interim Funding Agreement**" means the Interim Settlement Funding and Non-Waiver Agreement (and any amendments thereto) executed by Hartford A&I, the Debtors, and certain other Asbestos Insurers in 2013, as filed in the Coverage Action as Exhibit G to the Affidavit of Rose Balboni in Support of North River Insurance Company's Motion for Partial Summary Judgment to Enforce This Court's July 10, 2014 Order and the August 23, 2017 Decision and Order of the Appellate Division (Dec. 22, 2017, NYSCEF No. 370), and any similar

agreements between or among the Debtors and the Asbestos Insurers to allocate costs arising from Asbestos Claims.

gg.    **"Overseas Policies"** means the insurance policies and/or alleged policies identified on <u>Exhibit 2</u> issued by Hartford Insurance Company of the Midwest.

hh.    **"Payment Date"** means that date which is seven (7) Business Days after the later of the Approval Date and the Plan Effective Date.

ii.    **"Person"** means an individual, a corporation, a partnership, an association, a trust, or any other entity or organization, and any federal, state, or local governmental or quasi-governmental body or political subdivision or any agency, department, board, or instrumentality thereof.

jj.    **"Plan"** means any Chapter 11 plan confirmed by the Bankruptcy Court in the Bankruptcy Case, including the Filed Plan if and when confirmed.

kk.    **"Policies"** means any and all liability insurance policies, known and unknown, that were issued or allegedly issued by the Hartford Entities, as constituted on the Execution Date, to one or more of the Debtors, or under which one or more of the Debtors is insured or may claim to be insured or entitled to benefits, that provide or are alleged to provide coverage for Asbestos Claims, including the policies listed on <u>Exhibit 1</u> hereto.  Notwithstanding the foregoing, the term "Policies" shall not include the Overseas Policies.

ll.    **"Released Overseas Policy Interests"** means the Interests released in Sections III.A.2 of this Agreement.

mm.    **"Section 524(g) Injunction"** means an injunction issued pursuant to 11 U.S.C. § 524(g) in connection with confirmation of a Plan.

nn.    **"Settlement Amount"** means ████████████████████████.

7

oo.    "**Settling Asbestos Insurer**" has the meaning ascribed to it in the Filed Plan.

pp.    "**Trust**" means any trust established by the Debtors pursuant to the Plan for the benefit of holders of Channeled Asbestos Claims.

## <u>TERMS OF AGREEMENT AND RELEASES</u>

**I.    PAYMENT OF SETTLEMENT AMOUNT**

**A.**    On the Payment Date, Hartford A&I shall pay the Settlement Amount to (1) the Trust or (2) if no Trust is formed or established under the Plan, the Debtors.  At least seven (7) days prior to the Payment Date, the Debtors shall provide Hartford A&I with instructions for payment by check, including, if applicable, the tax identification number of the Trust.  Payment of the Settlement Amount is final, except as provided in <u>Section V.A.</u> of this Agreement.

**B.**    Hartford A&I's obligation to pay the Settlement Amount is subject to the condition that the Approval Date and the Plan Effective Date have both occurred; provided, however, that Hartford A&I, in its sole discretion, may elect in writing to waive the condition precedent that the Approval Date has occurred and pay the Settlement Amount after the Approval Order has been entered but before the Approval Date has occurred.  In the event any payment is due on a date that is not a Business Day, the payment shall be due on the first Business Day thereafter.

**C.**    Hartford A&I's payment of the Settlement Amount is in addition to any and all payments that may have been paid by any of the Hartford Entities to or for the benefit of Duro Dyne prior to the Execution Date.  Any and all payments by one or more of the Hartford Entities under, arising out of, related to, or involving the Policies are deemed final and irrevocable payments, except as provided for in <u>Section V</u> hereto.

**D.**    Subject to the terms of this Agreement, the Parties expressly agree that the Settlement Amount, together with any amounts paid by one or more of the Hartford Entities prior to the Execution Date, is the total amount that the Hartford Entities are obligated to pay on account

8

of any and all Claims arising from, based on or attributable to the Policies or any Interim Funding Agreement.

      **E.**      The Settlement Amount shall not be subject to any Claims for deductions, setoffs, or charge-backs by any of the Hartford Entities of any kind, including Claims involving recoupment or deductibles, contribution, self-insured retentions, additional premiums, or retrospective or reinstatement premiums under the Policies or any Interim Funding Agreement.

## II.      BANKRUPTCY-RELATED OBLIGATIONS

      **A.**      Prior to the Execution Date, the Debtors will seek and obtain the Consenting Entities' written consent to the Debtors' entry into this Agreement.

      **B.**      Within ten (10) Business Days after the Execution Date, or as soon thereafter as reasonably possible, the Debtors shall, at their sole cost and expense, file the Approval Motion and seek entry of the Approval Order by the Bankruptcy Court.  The Approval Order shall be substantially in the form of the order attached hereto as Exhibit 3 or otherwise in form and substance acceptable to the Parties and the Consenting Entities.  The Debtors shall serve notice of the Approval Motion and any hearing on each of those persons identified in Paragraph E of the Approval Order, provided that notice to the holder of any Asbestos Claim shall be sent to his or her known counsel of record in accordance with the "Notice Procedures" approved in that certain *Order (I) Authorizing the Listing of Addresses of Counsel for Personal Injury Claimants in Creditor Matrix in Lieu of Claimants' Addresses and (II) Approving Notice Procedures for Such Claimants* that the Bankruptcy Court entered on September 11, 2018 in the Bankruptcy Cases [at ECF No. 36].

      **C.**      The Parties shall cooperate in good faith to ensure that the Approval Order is entered and becomes a Final Order.

**D.**    Hartford A&I's payment of the Settlement Amount is not conditioned upon entry

of a Section 524(g) Injunction.  Nevertheless, the Hartford Entities shall be designated as Settling

Asbestos Insurers under the Plan.  If any proposed Chapter 11 plan provides for a Section 524(g)

Injunction or any other injunctive protection to be afforded to any Settling Asbestos Insurer, the

Debtors shall designate the Hartford Entities as Settling Asbestos Insurers, or the equivalent

thereof, entitled to the benefit of any and all such injunctions, including any Section

524(g) Injunction.

**E.**    Subject to the occurrence of the Approval Date, and except to contend that the

Debtors have breached this Agreement (including Section II.C), the Hartford Entities shall not

object to any Chapter 11 plan proposed by the Debtors and supported by the Committee and the

FCR, nor in any other way participate in the Bankruptcy Cases.  Promptly following the date on

which the Bankruptcy Court approves the Agreement, Hartford A&I shall (1) withdraw any and

all motions, briefs, pleadings, proofs of claim, claims, votes, and objections it has made in the

Bankruptcy Cases and any request for relief from Duro Dyne will be deemed withdrawn; and

(2) not pursue any Claims against Duro Dyne in the Bankruptcy Cases or that have been released

pursuant to this Agreement.  Promptly after the Execution Date, each Party shall:

1)    withdraw any and all outstanding discovery requests;

2)    serve no new discovery requests in the Bankruptcy Cases directed by the

Debtors, the Committee, or the FCR to Hartford A&I or by Hartford A&I

to Duro Dyne, the Committee, or the FCR; and

3)    file no new motions, briefs, pleadings, proofs of claims, votes, objections,

or other requests for relief against the other Party in the Bankruptcy Cases

except as provided in Section V.C. of this Agreement.

**F.**    On the Plan Effective Date, the rights and obligations of Duro Dyne under this Agreement shall be deemed to have been assigned and transferred to the Trust without need of further action by any Party or Person, and the Trust shall be bound by all of the provisions of this Agreement.  The Debtors (including the reorganized Debtors) shall continue to be bound by this Agreement and shall retain the obligations and benefits hereunder.

## III.    RELEASES

**A.**    **Release of the Hartford Entities.**  Effective upon Hartford A&I's payment in full of the Settlement Amount, and in consideration for payment of such Settlement Amount:

1)    The Debtors, on behalf of themselves and Duro Dyne, hereby (a) fully and forever release the Hartford Entities from any and all Claims by or on behalf of Duro Dyne based on, arising from, or attributable to the Policies or any Interim Funding Agreement (including Asbestos Claims, Direct Action Claims, and Extra-Contractual Claims) to the fullest extent permitted by law; (b) withdraw any and all Claims, requests, demands, or tenders for defense or indemnity previously submitted by or on behalf of Duro Dyne to the Hartford Entities under the Policies or any Interim Funding Agreement; and (c) surrender, relinquish, and release any right to tender or present any Claims by or on behalf of Duro Dyne based on, arising under, or attributable to the Policies or any Interim Funding Agreement.  The Hartford Entities shall have no duty to defend or indemnify Duro Dyne with respect to any Claims based on, arising from, or attributable to the Policies or any Interim Funding Agreement.

11

2)      The Debtors, on behalf of themselves and Duro Dyne, hereby fully and forever release the Hartford Entities from any and all Claims by or on behalf of Duro Dyne based on, arising from, or attributable to the Overseas Policies that arise from (a) exposure or alleged exposure to asbestos (including any Asbestos Claims); and (b) any Claim discharged under any Plan.  The Hartford Entities shall have no duty to defend or indemnify Duro Dyne with respect to any Claims based on, arising from, or attributable to the Overseas Policies released pursuant to this paragraph.

**B.**      **Release by the Hartford Entities.**  Effective upon the Payment Date:

1)      Hartford A&I, on behalf of itself and the other Hartford Entities, hereby (a) fully and forever releases Duro Dyne from any and all Claims based on, arising from, or attributable to the Policies or any Interim Funding Agreement (including Asbestos Claims, Direct Action Claims, and Extra-Contractual Claims), to the fullest extent permitted by law; (b) withdraws any and all Claims, requests or demands for defense or indemnity, including reimbursement of payments made by any Hartford Entity, previously submitted by or on behalf of a Hartford Entity to Duro Dyne under the Policies or any Interim Funding Agreement; (c) surrenders, relinquishes, and releases any right to assert, tender, or present any Claims by or on behalf of any of the Hartford Entities under the Policies or any Interim Funding Agreement.  Duro Dyne shall have no duty to indemnify or reimburse the Hartford Entities with respect to any Claims based on, arising from, or attributable to the Policies or any Interim Funding Agreement.

2)      Hartford A&I, on behalf of itself and the other Hartford Entities, hereby

fully and forever releases Duro Dyne with respect to any Claims based on,

arising from, or attributable to the Overseas Policies that arise from (a)

exposure or alleged exposure to asbestos (including any Asbestos Claims);

and (b) any Claim discharged under any Plan.  Duro Dyne shall have no

duty to indemnify or reimburse the Hartford Entities with respect to any

Claims based on, arising from, or attributable to the Overseas Policies that

are released under this paragraph.

**C.      Unknown or Future Claims.**   The Parties expressly acknowledge that there may

be changes in the law or the Parties may hereafter discover facts different from, or in addition to,

those that they now believe to be true with respect to any and all of the Claims released in Sections

III.A and III.B above.  Nevertheless, the Parties hereby agree that (subject to Section V below) the

releases set forth in Sections III.A and III.B above shall be and remain effective in all respects,

notwithstanding any changes in the law or the discovery of such additional or different facts.  In

addition, the Parties acknowledge they have been advised by their respective legal counsel and are

familiar with the provisions of Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims which the creditor
> does not know or suspect to exist in his favor at the time of the
> executing of the release which if known by him must have
> materially affected his settlement with the debtor.**

**D.      Agreement Rights and Obligations Not Affected.**   The releases set forth in

Sections III.A and III.B of this Agreement are not intended to, and shall not, extend to or otherwise

release any rights, privileges, benefits, duties, or obligations of the Parties by reason of, or

otherwise arising from, this Agreement or the Plan.

## IV.    DISMISSAL OF THE COVERAGE ACTION

The Parties will not file or maintain further or other coverage actions against each other with respect to Claims that are the subject of the releases under this Agreement unless this Agreement becomes null and void.

Within seven (7) Business Days after the date on which Hartford A&I pays the Settlement Amount in full, the Debtors and Hartford A&I each shall dismiss, with each Party to bear its own fees and costs, all Claims they have asserted against each other in the Coverage Action with prejudice.  For the avoidance of doubt, the dismissals pursuant to this Section IV shall not be of any Claim permitted under Section VII of this Agreement against any insurer or entity not party to this Agreement.

## V.    CONDITIONS PRECEDENT AND VOIDABILITY

A.    Notwithstanding anything to the contrary in this Agreement, in the event of any judicial disapproval of this Agreement, including the Bankruptcy Court's refusal to enter the Approval Order, or if on appeal the Approval Order is vacated or reversed, either Party shall have the right to declare this Agreement null and void.  In the event this Agreement shall become null and void, all payments made by Hartford A&I pursuant to this Agreement prior to the time it is declared null and void, along with income earned thereon, if any, shall be returned to Hartford A&I.

B.    If this Agreement becomes null and void pursuant to Section V.A above, then: (1) the Agreement, except for Section VIII and any definitions of capitalized terms used herein (which shall remain in full force and effect), shall be vitiated and shall be a nullity; (2) Hartford A&I shall have no obligation to pay the Settlement Amount pursuant to this Agreement; (3) the Debtors shall not be obligated by this Agreement to designate any of the Hartford Entities as a Settling Asbestos Insurer, or its equivalent, and the Hartford Entities shall not be entitled under

this Agreement to assert as a defense to any Claim any benefit of any injunction under the Plan or contained within the Confirmation Order or the Approval Order; and (4) the Hartford Entities and Duro Dyne shall have all of the rights, defenses, and obligations under or with respect to the Policies, the Overseas Policies, and any Interim Funding Agreement that they would have had absent this Agreement.  Any and all otherwise applicable statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date through the date on which this Agreement becomes null and void in accordance with Section V.A above, and no Party shall assert or rely on any time-related defense to any Claim by any other Party related to such period.

C.     In the event that the Bankruptcy Court denies approval of this Agreement, or such approval is vacated, reversed, or modified on appeal, then the Debtors shall afford Hartford A&I a reasonable opportunity to reassert any and all rights and defenses in the Bankruptcy Cases including (1) plan objections, (2) filing proofs of claim, (3) Claim objections, and (4) motions to allow Hartford A&I's Claims for voting purposes pursuant to Bankruptcy Rule 3018.

VI.    **JUDGMENT REDUCTION**

In the event that any other Person or insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from the Hartford Entities as a result of a Claim for contribution, subrogation, indemnification, or other similar Claim against the Hartford Entities for any Hartford Entity's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense or indemnity obligation of the Hartford Entities for any Claims released in Sections III.A or III.B above, the Debtors (or their successors, including the Trust) shall voluntarily reduce their judgment(s) or Claim(s) against, or settlement with, such other Person or insurer(s) to the extent necessary to eliminate such contribution, subrogation, or indemnification Claim(s) against the Hartford Entities.  To ensure that such a reduction is accomplished, the Hartford

15

Entities shall be entitled to assert this paragraph as a defense to any action against it for any such portion of the judgment or Claim and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect the Hartford Entities from any liability for the judgment or Claim.

## VII.    CONTRIBUTION CLAIMS

Except as otherwise provided in this Agreement, as of the Approval Date, the Hartford Entities shall not assert or file, and will dismiss any pending Claim seeking contribution, indemnity, or defense against another insurer or other Person in order to recover any portion of the Settlement Amount or other amounts previously paid by one or more of the Hartford Entities to or on behalf of Duro Dyne under or with respect to the Policies, the Released Overseas Policy Interests, or any Interim Funding Agreement; however, nothing herein shall preclude a Hartford Entity from filing, asserting or continuing to pursue such a Claim seeking contribution, indemnity, or defense in the event another insurer or other Person asserts or has asserted a Claim for contribution or indemnity against a Hartford Entity, provided that, to the extent that a Hartford Entity recovers from that other insurer or that other Person, the proceeds of such recovery shall be paid by such Hartford Entity per the instruction of the Trust or, if no Trust has been formed, the Debtors, after such Hartford Entity is reimbursed from such proceeds for its reasonable fees and costs incurred after the Approval Date in defending the Claim asserted against such Hartford Entity and prosecuting its Claim against that other insurer or that other Person.  Nothing contained in this Agreement shall be construed to prohibit a Hartford Entity from making a Claim against any reinsurer or from pursuing its recoveries from any reinsurer in its capacity as such, regardless of the identity or affiliation of the reinsurer, nor to preclude a Hartford Entity from retaining any such recoveries.  To the extent that any of the Debtors or the Trust settles Claims arising out of Claims released in Section III.A above with any other insurer or other Person, such Debtor or the Trust,

as applicable, will use reasonable best efforts to obtain a waiver of that other insurer's or other Person's Claims seeking contribution, indemnity, or defense against the Hartford Entities based upon, arising out of, or in any way attributable to such Claims.

## VIII.    NO ADMISSIONS AND NON-ADMISSIBILITY OF THE AGREEMENT

Nothing contained in this Agreement, or in any negotiations, discussions, correspondence, or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement shall be deemed to be an admission on the part of the Parties with respect to any matter or any factual or legal issue of any kind.  Except as may be necessary to seek or obtain entry of the Approval Order in the Bankruptcy Cases, to enforce the terms of this Agreement, or as may be necessary or useful in the pursuit by a Hartford Entity of a reinsurance recovery for sums to be paid under this Agreement, neither this Agreement itself, nor any negotiations, discussions, correspondence, or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be discoverable or admissible in any legal or equitable proceeding of any kind, including any lawsuit, mediation, arbitration, administrative proceeding or action, or any other proceeding or action of any kind.  Notwithstanding the foregoing, and provided that the Agreement does not become null and void pursuant to Section V hereof, the Hartford Entities shall not object to any Chapter 11 plan proposed by the Debtors and supported by the Committee and the FCR, unless that plan is inconsistent with the rights and benefits provided to the Hartford Entities under this Agreement.  Hartford A&I's entry into this Agreement does not constitute an endorsement of any Chapter 11 plan for the Debtors, including the Filed Plan, nor a statement of position as to whether any such Chapter 11 plan is lawful or reasonable.

## IX.    BINDING EFFECT OF AGREEMENT

All terms and provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties, Duro Dyne, the other Hartford Entities, and their respective successors and assigns, including the Trust.

## X.    DISPUTE RESOLUTION

If any dispute should arise concerning the terms, meaning, or implementation of this Agreement, the Parties agree to use their best efforts to reach a prompt resolution of such dispute, but in the event they are unable to do so, either Party may initiate litigation in an appropriate forum, which may include the Bankruptcy Court.

## XI.    CONSTRUCTION OF AGREEMENT

A.    The Parties represent and acknowledge that they have participated in the preparation and drafting of this Agreement or have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party on the basis that one Party drafted the language of this Agreement or played a greater role in the drafting of the language or that one party is an insurer.  This Agreement is not a contract of insurance and any rules of construction or interpretation specifically applicable to insurance policies shall have no weight or effect.

B.    The headings of this Agreement are asserted for convenience and are not part of the provisions hereof and shall have no force or effect.

C.    If any provision of this Agreement or application thereof is held to be invalid or unenforceable, the remainder of this Agreement shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties.  Notwithstanding the foregoing, the provisions in this

Agreement regarding Payment (<u>Section I</u>) and Releases (<u>Section III</u>) and the definitions of the defined terms that appear in those provisions shall not be severable from this Agreement.

## XII.    COOPERATION

A.    Each Party shall use its reasonable efforts to obtain the outcomes sought by this Agreement, and to take such steps and execute such documents as may be reasonably necessary and proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.  In the event that any action or proceeding is commenced or prosecuted by any Person to invalidate or prevent the validation, enforcement, or carrying out of all or any provisions of this Agreement, the Parties mutually agree to cooperate fully in opposing such action or proceeding.

B.    Each of the Parties shall reasonably cooperate with each of the other Parties in responding to or opposing any motion, objection, claim, assertion, or argument by any third party that this Agreement is not binding, or should be avoided, or that valuable and fair consideration or reasonably equivalent value has not been exchanged pursuant to this Agreement.

## XIII.   MEDICARE REPORTING AND MEDICARE PAYMENTS

A.    Hartford A&I's payment obligations under this Agreement are solely to pay the Trust (or, if no Trust is formed or established under the Plan, the Debtors) as set forth in <u>Section I</u> above.  In no event shall Hartford A&I pay or be obligated to pay directly any claimant, representative of any claimant or Duro Dyne's defense counsel on account of any Asbestos Claim.

B.    Hartford A&I shall not have any responsibility to make any required reports (or to make any payments owed or sums to be paid) to Medicare or to the United States government or any agency or instrumentality thereof pursuant to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2) and/or under any regulations promulgated thereunder including 42 C.F.R.

§ 411.20 et seq. with respect to any payment the Debtors or the Trust receives under this Agreement.

**C.**    The Trust, in the event that it is established (or the Debtors, in the event it is not), shall be designated as the "RRE Agent."

**D.**    The RRE Agent shall, at its sole expense, act as Hartford A&I's reporting agent, and shall timely submit all reports that are required by a Responsible Reporting Entity under the reporting provisions of Section III of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173) or any other similar statute or regulation ("MMSEA") on account of Asbestos Claims paid by the RRE Agent.  The RRE Agent shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing or receiving reports under MMSEA (collectively, "CMS") to determine whether or not and, if so, how to report to CMS pursuant to MMSEA.

**E.**    The RRE Agent shall provide a written notification to Hartford A&I within ten (10) Business Days following receipt of any notification from CMS that any report was rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance.

**1.**    With respect to any reports rejected or otherwise identified as noncompliant by CMS, the RRE Agent shall, at Hartford A&I's request, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports.  The RRE Agent shall reasonably undertake to remedy any issues of noncompliance that CMS identifies and to resubmit such reports to CMS.  Upon request by Hartford A&I, the RRE Agent shall provide copies of such resubmissions.  With respect to

copies of original reports and resubmissions provided under this Section XIII.E.1, the RRE

Agent may redact from such copies the names, social security numbers other than the last four

digits, health insurance claim numbers, taxpayer identification numbers, employer identification

numbers, mailing addresses, telephone numbers, and dates of birth of the injured parties,

claimants, guardians, conservators, and/or other personal representatives, as applicable.

   **2.**  All documentation that the RRE Agent relies upon in making a

determination that a payment does not have to be reported to CMS shall be maintained for a

minimum of six (6) years following such determination.

   **F.**  Absent guidance to the contrary from CMS, the Secretary of Health and Human

Services or a controlling court, including the United States Court of Appeals for the Third

Circuit, the Trust (or Debtors, as appropriate) is not required by this Agreement to report any

Asbestos Claim for a claimant who alleges that exposure to or ingestion of asbestos or asbestos-

containing product for which Duro Dyne allegedly is responsible took place exclusively before

December 5, 1980.

   **G.**  In the event that CMS concludes that reporting done by the RRE Agent in

accordance with this Section is or may be deficient in any way, and has not been corrected to the

satisfaction of CMS in a timely manner, or if CMS communicates to the RRE Agent or Hartford

A&I a concern with respect to the sufficiency or timeliness of such reporting or non-reporting,

then Hartford A&I shall have the right to submit its own reports to CMS under MMSEA, and the

RRE Agent shall provide to Hartford A&I such information as Hartford A&I may require to

comply with MMSEA including the full reports filed by the RRE Agent without any redactions.

Hartford A&I shall keep any information received from the RRE Agent pursuant to this

Paragraph confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

**H.**     The Trust shall obtain, prior to remittance of funds to claimants' counsel or the claimant, if pro se, in respect of any Asbestos Claim, a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Asbestos Claim.  The Trust shall provide a certification of its compliance with this Section to Hartford A&I upon Hartford A&I's request, but not more often than quarterly.  The Trust shall permit reasonable audits by Hartford A&I, no more often than quarterly, to confirm the Trust's compliance with this Section.  Hartford A&I shall keep any information and documents received from Duro Dyne and the Trust pursuant to this Section XIII.H confidential and shall not use such information for any purpose other than meeting obligations under this Section XIII.H.

**I.**     Compliance with the requirements of this Section shall be a material obligation of Debtors and/or the Trust in favor of Hartford A&I under this Agreement.

## XIV.    REPRESENTATIONS, WARRANTIES, AND OTHER MISCELLANEOUS PROVISIONS

**A.**     Each Party represents and warrants that, subject to entry of the Approval Order, it has taken all necessary corporate and legal action required duly to approve the making and performance of this Agreement and that no further action is necessary to make this Agreement binding and legally enforceable.

**B.**     Each Party represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law or any of its respective articles of incorporation or bylaws or any contract or agreement by which it is bound.

22

**C.**    Each Party represents and warrants that (1) it is the owner of the rights and Claims to be compromised and released by it under this Agreement, and (2) it has not assigned or transferred to any Person any such right or Claim or other matter to be compromised and released hereunder.

**D.**    Each Party represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable on and after the Trigger Date.

**E.**    Each Party represents and warrants that this Agreement has been entered into in good faith, as a result of arms-length negotiations, with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate, and good faith compromise of disputed Claims, disputed liabilities, and disputed issues.

**F.**    Each Party represents and warrants that it has read this Agreement in its entirety, fully understands all of its terms and the consequences thereof, and that the individual signing this Agreement on its behalf has, subject to entry of the Approval Order, full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

**G.**    Hartford A&I represents and warrants that it is duly authorized to act on behalf of the other Hartford Entities so as to bind them to the provisions of this Agreement, including Section II.E and the releases granted under Section III.B, and to make those provisions enforceable against each of the Hartford Entities.

**H.**    The Debtors represent and warrant that they are duly authorized to act on behalf of Duro Dyne so as to bind Duro Dyne to the provisions of this Agreement, including the releases granted under Section III.A, and to make those provisions enforceable against Duro Dyne.

**I.**      This Agreement (including the exhibits attached to it) sets forth the entire agreement among the Parties as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or verbal.

**J.**      All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the other Parties and Consenting Entities at the addresses set forth below, or to such other persons or addresses as the Parties or Consenting Entities may designate in writing from time to time:

<u>For Hartford</u>:

James P. Ruggeri, Esq.
Joshua Weinberg, Esq.
Shipman & Goodwin LLP
1133 Connecticut Avenue, NW
Washington, DC 20036
jruggeri@goodwin.com

<u>For Duro Dyne</u>:

Jeffrey D. Prol, Esq.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068
jprol@lowenstein.com

<u>For the Consenting Entities</u>:

*Committee*:

Kami E. Quinn, Esq.
Gilbert LLP
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
quinnk@gilbertlegal.com

*FCR:*

Edwin J. Harron, Esq.
Young Conaway Stargatt & Taylor
1000 North King Street
Wilmington, DE 19801
eharron@ycst.com

**K.**     This Agreement may be amended only by a writing signed by or on behalf of each

Party and, if before the Plan Effective Date, each of the Consenting Entities.

**L.**     Hartford A&I represents that it has made a good faith search and that it has located

no evidence of any liability policies issued by any of the Hartford Entities, as constituted on the

Execution Date, under which Duro Dyne is insured or may claim to be insured or entitled to

benefits, and that provide or are alleged to provide coverage for Asbestos Claims, other than those

listed on <u>Exhibits 1 and 2</u>.

**M.**     This Agreement may be executed in multiple counterparts, each of which shall be

deemed an original but all of which shall constitute one and the same instrument.  Execution of

this Agreement may be effected by PDF or other electronic transmission of executed copies of the

signature pages delivered to counsel for the Parties.

**IN WITNESS WHEREOF,** the Parties have duly executed this Agreement as of the last date indicated below.

DEBTORS (as defined)

By: _Radll / L C_

Name: _Randall Hinley_

Title: _C F O_

Date: _2/11/19_

HARTFORD A&I (as defined)

By: _____

Name: _____

Title: _____

Date: _____

**IN WITNESS WHEREOF,** the Parties have duly executed this Agreement as of the last date indicated below.

DEBTORS (as defined)

By: _____

Name: _____

Title: _____

Date: _____

HARTFORD A&I (as defined)

By: _____

Name: *Sean Johnston*

Title: *VP, Claim*

Date: *2. 7. 19*

26

### Exhibit 1

**Insurance Policies**

| Insurance Policies Issued to Duro Dyne | |
|---|---|
| **Policy No.** | **Policy Period** |
| 12CBPZB1729 | 6/23/86–6/23/87 |
| 12CBPMB9150 | 6/23/87–6/23/88 |
| 12UUNMB9150 | 6/23/88–6/23/89 |
| 12 RHU VJ9777 | 6/23/86–6/23/87 |
| 12 RHU VJ9777 | 6/23/87–6/23/88 |
| 12 RHU VG9777 | 6/23/88–6/23/89 |

## Exhibit 2

## Overseas Policies

| Insurance Policies Issued to Duro Dyne | |
|---|---|
| Policy No. | Policy Period |
| 93 UEN HV7227 | 1/15/88–1/15/89 |
| 93 UEN HV7227 | 1/15/89–1/15/90 |
| 93 UEN HV7227 | 1/15/90–1/15/91 |
| 93 UEN HV7227 | 1/15/91–1/15/92 |
| 93 UEN HV7227 | 1/15/92–1/15/93 |
| 93 UEN HV7227 | 1/15/93–1/15/94 |
| 93 UEN HV7227 | 1/15/94–1/15/95 |

**Exhibit 3**

**Approval Order**

---

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

---

LOWENSTEIN SANDLER LLP
Kenneth A. Rosen, Esq.
Jeffrey D. Prol, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtors and Debtors-in-Possession*

---

| | |
|---|---|
| In re: | Chapter 11 |
| DURO DYNE NATIONAL CORP., *et al.*, | Case No. 18-27963-MBK |
| Debtors.[1] | Jointly Administered |

---

**ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND
HARTFORD ACCIDENT AND INDEMNITY COMPANY AND AUTHORIZING THE
SALE OF THE POLICIES (AS DEFINED IN THE SETTLEMENT AGREEMENT)
FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS, AND OTHER ENCUMBRANCES**

　　　　The relief set forth on the following pages, numbered two (2) through and including twelve

(12), is hereby **ORDERED**.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax
identification number, are:  Duro Dyne National Corp. (4664); Duro Dyne Machinery Corp.
(9699); Duro Dyne Corporation (3616); Duro Dyne West Corp. (5943); and Duro Dyne Midwest
Corp. (4662).

This matter came before the Court on the motion (the "Motion"),[2] of Duro Dyne National Corp., Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp., the above-captioned debtors and debtors-in-possession (the "Debtors"), for an order pursuant to Sections 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing the Debtors to enter into a compromise and settlement with Hartford A&I (the "Agreement," a redacted copy of which is attached to the Motion as Exhibit A) pursuant to which (among other things) the Debtors, on behalf of the Debtors' bankruptcy estates and Duro Dyne, will provide the Hartford Entities releases, as set forth in the Agreement; (ii) authorizing the sale of the Policies and the Released Overseas Policy Interests to Hartford A&I pursuant to the terms and conditions of the Agreement, free and clear of all Interests; (iii) approving the Agreement in all respects; and (iv) enjoining various Claims against the Hartford Entities as set forth in Paragraph 8 below (the "Sale Injunction").  The appearances of all interested parties and all responses and objections to the motion, if any, have been duly noted in the record of the hearing held on _____, 2019 (the "Hearing").  Upon the record of the Hearing, the Motion, said responses and objections, if any, and after due deliberation and sufficient cause appearing therefore, the Court hereby makes the following:

---

[2] Except as otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Agreement (as defined herein).

2

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>[3]

### <u>Jurisdiction, Final Order, and Statutory Predicates</u>

**A.**    The Court has jurisdiction over the Motion and relief requested therein, including

responses and objections thereto, if any, pursuant to 28 U.S.C. §§ 157 and 1334, and this matter

is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O), as to which this Court

has the statutory and constitutional power to enter a final order.  Venue of this case and the

Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

**B.**    This Order constitutes a final and immediately appealable order within the

meaning of 28 U.S.C. § 158(a).

**C.**    The statutory predicates for the relief sought in the Motion are Sections 105(a),

363, and 541 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

### <u>Retention of Jurisdiction</u>

**D.**    It is necessary and appropriate for the Court to retain jurisdiction to, among other

things, interpret and enforce the terms and provisions of this Order and the Agreement, and to

adjudicate, if necessary, to the extent provided under 28 U.S.C. § 1334(b), any and all disputes

arising from or relating to the Agreement.

### <u>Notice of the Motion</u>

**E.**    The Debtors have provided due and adequate notice of the Motion, the Hearing,

the Agreement and the subject matter thereof to all parties in interest pursuant to Bankruptcy

Rules 2002 and 6004, in the manner authorized by this Court's *Order (I) Authorizing the Listing*

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

*of Addresses of Counsel for Personal Injury Claimants in Creditor Matrix in Lieu of Claimants'*

*Addresses and (II) Approving Notice Procedures for Such Claimants* that the Bankruptcy Court

entered on September 11, 2018, in the Bankruptcy Cases [at ECF Doc. No. 36].  Such notice was

good and sufficient under the particular circumstances, and no further notice is necessary.

Without limiting the generality of the foregoing, adequate notice of the Motion, the Hearing, and

the Agreement has been provided, and a reasonable opportunity to object or be heard with

respect to the Motion and the relief requested therein has been afforded, to all parties-in-interest,

including (i) the Committee, (ii) the FCR, (iii) all known claimants, including (a) all claimants or

counsel for claimants who have voted on any proposed Chapter 11 plan, and (b) all such

claimants who are known to the Debtors through participation in the Bankruptcy Cases, the filing

of a pre-petition lawsuit, or otherwise; (iv) the Office of the United States Trustee for Region 3;

and (v) all other Persons that, as of the date the Motion was filed, had filed a notice of

appearance and demand for service of papers in the Bankruptcy Cases or were otherwise listed

on the master service list maintained by or on behalf of the Debtors in the Bankruptcy Cases.

<u>Sound Business Judgment and Reasonableness</u>

**F.**     The relief requested in the Motion is in the best interests of the Debtors'

bankruptcy estates, their creditors, claimants, and other parties-in-interest.  The Debtors have

demonstrated good, sufficient, and sound business purposes and justifications for the relief

requested in the Motion and the approval of the settlement contemplated thereby.

**G.**     The Agreement, including the sale of the Policies and the Released Overseas

Policy Interests free and clear of any and all Interests, and the release of all Claims under any

Interim Funding Agreement, is fair and reasonable and in the best interests of the Debtors and

their bankruptcy estates.  The Settlement Amount represents fair and reasonable consideration

for the sale of the Policies and the Released Overseas Policy Interests, the release of Claims, and

the other provisions set forth in the Agreement.  The Agreement is also in the best interests of the

claimants and other parties in interest, because it is contemplated that the proceeds of the

settlement ultimately will be paid to the Trust established under a confirmed Plan to pay eligible

Channeled Asbestos Claims in accordance with the applicable trust distribution procedures.

  **H.**  The Debtors have demonstrated that the probability of success for the Debtors in

litigation over the matters resolved by the Agreement is uncertain and that the litigation of the

matters resolved by the Agreement would be complex and costly to the Debtors' bankruptcy

estates.  Entry into the Agreement is necessary and appropriate to maximize the value of the

Debtors' estates, is consistent with the reasonable range of potential litigation outcomes, and is in

the best interests of the Debtors, their bankruptcy estates, their creditors, and all parties in

interest because, among other reasons, the Agreement contemplates the payment of the

Settlement Amount to the Trust (provided that the Plan is confirmed).

Good Faith of Purchaser of the Policies

  **I.**  The Agreement was negotiated by the Parties in good faith, from arm's-length

bargaining positions, and without fraud or collusion.  Each Party to the Agreement was

represented by counsel.  The sale consideration to be realized pursuant to the Agreement is fair

and reasonable.  Hartford A&I is a good faith purchaser of the Policies and the Released

Overseas Policy Interests for value within the meaning of Section 363(m) of the Bankruptcy

Code and is entitled to the protections thereof.  Neither the Debtors, nor Hartford A&I, nor any

of their representatives have engaged in any conduct that would (i) cause or permit the

Agreement, or the sale of the Policies and the Released Overseas Policy Interests contemplated

therein, to be avoided under Section 363(n) of the Bankruptcy Code, (ii) cause or permit any

amounts, costs, attorneys' fees, expenses, or punitive damages to be recovered under Section

5

363(n) of the Bankruptcy Code, or (iii) prevent the application of Section 363(m) of the

Bankruptcy Code.

Satisfaction of Section 363(f) Requirements

**J.**     The Debtors may sell the Policies free and clear of Interests under Section 363(f)

of the Bankruptcy Code because one or more of the criteria set forth in Section 363(f)(1)–(5) of

the Bankruptcy Code has been satisfied.  Without limiting the generality of the foregoing, those

holders of Interests against any of the Policies who did not object, or who withdrew their

objections, to the Motion or the relief requested therein are deemed to have consented pursuant

to Section 363(f)(2) of the Bankruptcy Code, applicable non-bankruptcy law permits the sale of

the Policies pursuant to Section 363(f)(1) of the Bankruptcy Code and each holder of an Interest

in the Policies can be compelled, in a legal or equitable proceeding, to accept a money

satisfaction of such Interest as contemplated by Section 363(f)(5) of the Bankruptcy Code.  For

the same reasons, the Debtors may sell the Released Overseas Policy Interests free and clear of

the Interests of any other Person under Section 363(f) of the Bankruptcy Code.

**K.**     To the extent any Person has demonstrated an Interest in the Policies or the

Released Overseas Policy Interests that is entitled to adequate protection under the Bankruptcy

Code, such Interest is adequately protected as required by Section 363(e) of the Bankruptcy

Code, and in no circumstance will such Interest be satisfied by Hartford A&I.  The Interests of

Channeled Asbestos Claimants and other parties in interest are adequately protected because the

Agreement provides that the Settlement Amount will be paid to the Trust established pursuant to

a confirmed Plan to pay Channeled Asbestos Claims against the Debtors.

<u>No Successor Liability</u>

**L.**    Apart from the duties and obligations set forth in the Agreement, the transfer of the Policies and the Released Overseas Policy Interests pursuant to the Agreement does not and will not subject or expose any Hartford Entity to any liability, Claim, cause of action, or remedy by reason of such transfer under (a) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity; or (b) any employment contract, understanding, or agreement, including, without limitation, collective bargaining agreements, employee pension plans, or employee welfare or benefit plans.

**M.**    Hartford A&I is not assuming any of the Debtors' obligations to their employees (including any obligations under the Debtors' bankruptcy estates' collective bargaining agreements, if any) by reason of its purchase of the Policies and the Released Overseas Policy Interests.

**N.**    No common identity of officers or directors exists between Hartford A&I on the one hand and the Debtors and their bankruptcy estates on the other hand.

**O.**    Hartford A&I is purchasing the Policies and the Released Overseas Policy Interests pursuant to the Agreement and this Order.  Hartford A&I is not purchasing any other assets of the Debtors' bankruptcy estates.  Hartford A&I shall not have any responsibility or liability with respect to any of the bankruptcy estates' other assets or for any liability of, or Claims against, the Debtors.

**P.**    A sale of the Policies and the Released Overseas Policy Interests other than one free and clear of Interests, if possible at all, would impact adversely on the Debtors' bankruptcy

7

estates and would be of substantially less benefit to the Debtors, the creditors, and the estates. Hartford A&I would not purchase the Policies or the Released Overseas Policy Interests, nor pay the Settlement Amount, were the sale not free and clear of all Interests.

Sale Injunction

**Q.**      Issuing the Sale Injunctions under Section 105(a) of the Bankruptcy Code is essential to give effect to the sale of the Policies and the Released Overseas Policy Interests to Hartford A&I free and clear of Interests pursuant to Section 363(f) of the Bankruptcy Code.  The Sale Injunction is a necessary prerequisite for Hartford A&I's agreement to the terms and conditions of the Agreement, and Hartford A&I will not consummate the sale of the Policies or the Released Overseas Policy Interests in the absence of such an injunction from this Court.

For all of the foregoing reasons and after due deliberation, **IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is **GRANTED** and **APPROVED** in all respects.

2.      For the reasons set forth herein and on the record at the Hearing, all objections to the Motion and the relief requested therein and/or granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

3.      Pursuant to Section 363(b) of the Bankruptcy Code, the Debtors are authorized to enter into and consummate the Agreement, including to (i) sell, transfer, and convey the Policies and the Released Overseas Policy Interests to Hartford A&I in accordance with the terms and subject only to the conditions specified herein and in the Agreement, and (ii) release Claims as set forth in the Agreement.  The Debtors and Hartford A&I are each hereby authorized to take all actions and execute all documents and instruments that the Debtors and Hartford A&I deem necessary or appropriate to implement and effectuate the Agreement.

8

4.      The terms and provisions of the Agreement are approved in their entirety, and this

Order and the Agreement shall be binding upon:  Duro Dyne; the Hartford Entities; all Persons

holding Interests in the Policies, the Released Overseas Policy Interests, or Claims against the

Debtors or their bankruptcy estates; the FCR and each of the Persons whose shared interests or

demands he represents; the Committee and each of the Persons whose shared interests it

represents; the Debtors' insurers other than the Hartford Entities; any actual or potential insureds

under the Policies or the Overseas Policies; all other parties-in-interest; upon its creation, the

Trust; and each of the foregoing entities' respective successors and assigns.  The sale of the

Policies and the Released Overseas Policy Interests to Hartford A&I, effective upon Hartford

A&I's payment of the Settlement Amount in full, shall constitute a legal, valid, and effective

transfer and shall vest Hartford A&I with all right, title, and interest in and to the Policies and the

Released Overseas Policy Interests free and clear of all Interests pursuant to Section 363(f) of the

Bankruptcy Code.

5.      Hartford A&I shall pay to the Trust the Settlement Amount as provided in the

Agreement.

6.      The sale of the Policies and the Released Overseas Policy Interests to Hartford

A&I under the Agreement constitutes a transfer for reasonably equivalent value and fair

consideration for purposes of Section 548 of the Bankruptcy Code and comparable provisions of

non-bankruptcy law.

7.      Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, effective as of the

date that Hartford A&I pays the Settlement Amount in full, the Policies and the Released

Overseas Policies Interests shall be deemed sold and transferred to Hartford A&I, free and clear

of any and all Interests of all Persons in, to, and with respect to the Policies and the Released

Overseas Policies Interests, including any and all Claims against the Hartford Entities for

contribution, indemnity, or other liability under, based upon, arising from, or attributable to the

Policies and the Released Overseas Policies Interests (including any Direct Action Claims),

whether arising prior to, during, or subsequent to the Bankruptcy Cases or imposed by

agreement, understanding, law, equity, or otherwise.  Upon payment in full of the Settlement

Amount in accordance with the Agreement and transfer of the Policies and the Released

Overseas Policy Interests to Hartford A&I, the Policies and Released Overseas Policy Interests

will terminate and be of no further force or effect.  Any and all Interests that the Court

determines are entitled to protection under Section 363(e) of the Bankruptcy Code shall attach to

the proceeds of sale with the same validity, priority, force, and effect as such Interests had in the

Policies and the Released Overseas Policy Interests prior to entry of this Order, subject to the

terms and conditions of any Plan confirmed for the Debtors, to the extent such terms and

conditions are valid, binding, and enforceable.  Nothing contained herein is intended to nor shall

be deemed to constitute a determination of the extent, validity, or priority of any such Interests

that may be asserted.

       8.      **Effective upon payment in full of the Settlement Amount, pursuant to**

**Sections 105(a) and 363 of the Bankruptcy Code, all Persons who have held or asserted,**

**who hold or assert, or who may in the future hold or assert any Claim or Interest of any**

**kind or nature against or in any of the Debtors, their bankruptcy estates, the Policies, the**

**Released Overseas Policy Interests, or the Hartford Entities based upon, arising under or**

**out of, or in any way attributable to the Policies, the Released Overseas Policy Interests, or**

**any Interim Funding Agreement, whenever or wherever arising or asserted (including all**

**thereof in the nature of or sounding in tort, contract, warranty, or any other theory of law,**

**equity, or admiralty), shall be and hereby are permanently stayed, restrained, and enjoined from asserting any such Claims or Interests against the Hartford Entities and from continuing, commencing, or otherwise proceeding or taking any action against the Hartford Entities to enforce such Interests or Claims or for the purpose of directly or indirectly collecting, recovering or receiving payments from the Hartford Entities to recover with respect to any such Claim or Interest.**

9.      Hartford A&I is not, and shall not be deemed to be, a successor to the Debtors or the Debtors' bankruptcy estates by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Agreement or otherwise.  Hartford A&I shall not assume any liabilities of the Debtors or their bankruptcy estates.

10.     The transactions contemplated by the Agreement, including the sale of the Policies and the Released Overseas Policy Interests to Hartford A&I free and clear of all Interests, are undertaken by Hartford A&I in good faith, as that term is used in Section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization to consummate the sale and the transactions contemplated by the Agreement shall not affect the validity of the sale of the Policies and the Released Overseas Policy Interests, unless such authorization is duly stayed pending such appeal.  Hartford A&I is a purchaser in good faith of the Policies and the Released Overseas Policy Interests and shall be entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.  Neither the Debtors nor their bankruptcy estates shall commence any action against Hartford A&I seeking relief under Section 363(n) of the Bankruptcy Code with respect to the Policies or the Released Overseas Policy Interests.

11.     Pursuant to Bankruptcy Rule 9019(a), the settlement and mutual release of Claims as set forth in the Agreement are hereby approved.  Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable upon Hartford A&I's payment of the Settlement Amount in full, and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(h).

12.     The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

13.     This Court shall, to the extent authorized by 28 U.S.C. § 1334(b), retain jurisdiction to interpret and enforce the provisions of this Order and the Agreement in all respects.  Such jurisdiction shall be retained even if a Plan is confirmed and/or the Bankruptcy Cases are closed, and the Bankruptcy Cases may be reopened for such purpose.

14.     Each and every federal, state, and local governmental agency or department is hereby directed to accept this Order in lieu of any document necessary to consummate the settlement contemplated by the Agreement and this Order.

15.     The provisions of this Order are mutually dependent and are not severable.

16.     Pursuant to Bankruptcy Rules 5003 and 9021 (and Fed. R. Civ. P. 58), the Clerk of this Court is directed forthwith to enter this Order on the dockets of the Bankruptcy Cases as a final order and judgment.